UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL A. VALENTINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:09-cv-01432-JMS-DML |
| | ) |
| CSX TRANSPORTATION, INC., | ) |
| | ) |
| Defendant. | ) |

# Order on Motion to Compel

This matter came before the court on the motion (Dkt. 42) of defendant CSX Transportation, Inc. ("CSXT") to compel plaintiff Michael A. Valentine to execute a medical authorization form by which Mr. Valentine authorizes his physicians to speak with CSXT's counsel on an *ex parte* basis (outside the presence of Mr. Valentine and/or his counsel) regarding Mr. Valentine's medical conditions causally or historically related to the medical conditions for which Mr. Valentine seeks relief in this litigation, or that otherwise have a direct relevance to Mr. Valentine's claims.

Mr. Valentine's suit against CSXT is brought under the Federal Employers Liability Act (45 U.S.C. § 51 *et seq.*), which generally provides for a cause of action by a railroad employee against his employer for injuries resulting from the employer's negligence. Mr. Valentine was employed by CSXT as a railroad conductor at CSXT's Hawthorne Yard in Indianapolis. (Amended Complaint, ¶ 5, Dkt. 29). He alleges that he tripped on a walkway that was in an unsafe condition, and "suffered severe injury to his right knee, shoulder, neck and elbow." (*Id.,* ¶ 10).

Judges in this district historically have permitted defense counsel to speak *ex parte* with a plaintiff's physicians concerning medical conditions the plaintiff put at issue in bringing suit. With its moving papers, CSXT filed with the court copies of orders from this district, going back to the 1970s and one as recent as mid-October 2010, reflecting this general policy. The magistrate judge determines that this case does not warrant a departure from the general policy followed in this court.

As discussed in Judge Hamilton's decision in *Patton v. Novartis Consumer Health, Inc.,* 2005 WL 1799509 (S.D. Ind. July 25, 2005), permitting defense counsel to privately interview a plaintiff's physicians promotes the fair and efficient administration of justice. Parties do not own witnesses and should not be permitted to control an opponent's gathering of information:

> [N]o party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance.

*Id.* at *4 (*quoting Doe v. Eli Lilly & Co.,* 99 F.R.D. 126, 128 (D.D.C. 1983)). It is taken for granted in the federal system that a lawyer may informally talk in private to any witness willing to speak to her. *Id.* at *3. Indeed, private interviews are a time and cost-efficient way to gather information, and lend themselves to a candid flow of information that the deposition setting may tend to stultify. *Patton,* 2005 WL 1799509 at *4. Cost and scheduling efficiencies are notable here because some of Mr. Valentine's doctors previously have been deposed. To the extent CSXT wishes to obtain some further information from these doctors, it would be particularly inefficient to require another deposition, or even to require that CSXT's counsel talk with the doctors only at a time that Mr. Valentine's counsel also can participate.

Contrary to the long-standing policy of this court, Mr. Valentine asserts that his privacy interests in his medical history and relationship with his doctors should trump CSXT's right to

2

interview witnesses. He asks the court to "recognize" or "respect" Indiana's doctor-patient privilege and to protect the privilege from circumvention by prohibiting *ex parte* communications with Mr. Valentine's doctors in the same way that an Indiana state court would do, under *Cua v. Morrison,* 626 N.E.2d 581 (Ind. Ct. App. 1993), *aff'd and adopted,* 636 N.E.2d 1248 (1994).

In *Cua*, the court decided that permitting defense counsel to privately interview a plaintiff's physicians posed too much of a risk that counsel would trample on Indiana's doctor-patient privilege by inquiring into medical information that the plaintiff had not put at issue in the litigation. The court determined that the risk could be substantially eliminated without harming fair and efficient trial preparation by requiring defense counsel to question a plaintiff's physicians in the presence of the plaintiff's counsel, either in an informal setting or a deposition setting. Thus, under *Cua,* Indiana state courts may not permit defense counsel to have private interviews with a plaintiff's physicians.

*Cua* does not provide the rule of decision in this case, however. First, Mr. Valentine's suit against CXST arises out of federal substantive law and, thus, evidentiary privileges are supplied by federal law. *United States v. Bek,* 493 F.3d 790, 801-2 (7th Cir. 2007); Fed. R. Evid. 501. To date, neither the United States Supreme Court nor the Seventh Circuit has recognized a federal common law doctor-patient evidentiary privilege, *Whalen v. Roe,* 429 U.S. 589, 602 n.28 (1977), *Bek,* 493 F.3d at 802.[1] Second, even if this were a diversity case and Indiana's doctor-patient privilege applied under Fed. R. Evid. 501, the *Cua* prohibition against *ex parte* interviews of a plaintiff's physicians is recognized as a rule of procedure—how discovery may be

---

[1] In *Jaffee v. Redmond,* 518 U.S. 1 (1996), the Supreme Court recognized a federal common law psychotherapist-patient privilege, but even after *Jaffee* the Seventh Circuit has continued to decline to recognize a federal physician-patient privilege. *Bek,* 493 F.3d at 802.

conducted—and not part of the substantive law of Indiana's doctor-patient privilege. *Patton v. Novartis Consumer Health, Inc.,* 2005 WL 1799509 at \*3 (S.D. Ind. July 25, 2005).

Thus, "respecting" Indiana's doctor-patient privilege does not counsel forbidding *ex parte* communications. This court has routinely found it unwarranted to prohibit *ex parte* contacts with a plaintiff's physicians, at least without a showing that an *ex parte* communication would substantially risk defense counsel learning sensitive medical information irrelevant to the litigation. *Patton,* 2005 WL 1799509 at \*1; *Eve v. Sandoz Pharmaceuticals Corp.,* 2002 WL 32153352 at \*1 (S.D. Ind. May 16, 2002) (District Judge Young's entry affirming order of Magistrate Judge Shields); *Shots v. CSX Transportation, Inc.,* 887 F. Supp. 206, 207-08 (S.D. Ind. 1995) (noting plaintiff had not identified any medical condition that was "potentially embarrassing or ruinous" and irrelevant to the case).

Mr. Valentine has not brought to the court's attention that there exists any sensitive medical condition irrelevant to the litigation about which CSXT's counsel might learn in private communications with Mr. Valentine's doctors. Indeed, according to CSXT (and not challenged by the plaintiff), Mr. Valentine has previously executed broad-form medical release authorizations permitting his medical providers to release *all* of Mr. Valentine's medical records to CSXT's counsel.

Mr. Valentine also insists that because bringing suit under FELA was his only way to obtain a remedy against CSXT, the filing of suit cannot be deemed a "waiver" of his "right to object to *ex parte* communications with his healthcare professionals." But there is no right to forbid *ex parte* communications. Mr. Valentine also contends that because 49 U.S.C. § 20109(c)(1) prohibits a railroad carrier from interfering with an employee obtaining medical treatment, *ex parte* communications should be forbidden since they could affect the medical

4

judgment of his doctors. The court finds this argument far-fetched. It is without supporting authority, is a strained reading of the statutory section, which is titled "Prompt Medical Attention," and the court doubts the suggestion that doctors would alter their medical judgment because they talked to a lawyer privately rather than in a deposition setting.

By bringing suit, Mr. Valentine put at issue medical conditions relevant to the damages he seeks from CXST. Although Mr. Valentine's opposition to CSXT's motion states that only an injury to his right knee is at issue, his amended complaint says otherwise. According to the amended complaint, Mr. Valentine is seeking to hold CXST responsible for injuries to his right knee, shoulder, neck and elbow, which are alleged to be serious enough to have caused disability and to have kept Mr. Valentine from being able to attend to his ordinary affairs and duties. (Amended Complaint, ¶ 14). In addition, the condition of Mr. Valentine's left knee is relevant under CSXT's theory that Mr. Valentine suffers generally from osteoarthritis in both knees, thus raising the possibility that any injury to his right knee is not traceable to Mr. Valentine's on-the-job injury.

Mr. Valentine simply has not convinced the court that permitting *ex parte* communications poses a true risk that CSXT's lawyers would learn sensitive or embarrassing medical information about Mr. Valentine irrelevant to this litigation. Absent that kind of showing, Mr. Valentine's insistence on depositions or the presence of his counsel looks like an attempt to control a witness rather than an effort to protect medical privacy. As Judge Hamilton explained, allowing *ex parte* communications is a matter of fairness and symmetry. Neither side owns witnesses, and each side should be free to contact witnesses privately. The form of medical authorization proposed by CSXT properly limits its scope to those medical conditions causally or historically related to the medical conditions at issue in this case, including those

conditions that medically relate to defense theories. The court finds it unnecessary to impose other conditions not already in the form of release submitted to the court.

CSXT's motion is GRANTED. Within ten days of this order, Mr. Valentine shall execute and deliver to CSXT's counsel medical records authorizations in the form attached as Exhibit 1 to the motion.

SO ORDERED.

Date: 11/10/2010

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Craig Wynn Church
HOEY & FARINA
cchurch@hoeyfarina.com

John C. Duffey
STUART & BRANIGIN LLP
jcd@stuartlaw.com

James F. Olds
STUART & BRANIGIN LLP
jfo@stuartlaw.com

Sarah N. Snoeberger
STUART & BRANIGIN LLP
sns@stuartlaw.com