UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MICHAEL A. VALENTINE,              )
                                   )
          Plaintiff,               )
      vs.                          ) NO. 1:09-cv-01432-JMS-MJD
                                   )
CSX TRANSPORTATION, INC.,          )
                                   )
          Defendant.               )

**Report & Recommendation**

This matter is before the Court on Defendant CSX
Transportation, Inc.'s ("CSX") Motion to Exclude expert
testimony, [Dkt. 63], and CSX's Motion to Exclude the report and
testimony of Plaintiff Michael A. Valentine's ("Valentine")
expert, Dr. Dennis Gates.  [Dkt. 61.]  On March 30, 2011, the
Court heard arguments regarding these motions.  For the reasons
discussed below, the Magistrate Judge recommends denying both
motions.

**I. Background**

This case involves a trip and fall accident.  Valentine, a
Railroad Conductor, filed a claim under the Federal Employer
Liability Act ("FELA") alleging that, on March 2, 2009, he
tripped over partially removed wooden planking that projected
above the walkway he was using to get to his train.  Valentine
alleges that his right knee struck the rail when he fell and
since then he has experienced significant pain in his right knee.
Valentine has not returned to work since the accident.

After the accident, Valentine was taken to and examined at Concentra Hospital.  Valentine had no obvious bruising or swelling of the knee and had full range of motion.  Tests showed Valentine suffered no damage or tears to his ligaments, or swelling behind the knees, and x-rays revealed no fractures.  The hospital released Valentine without a work restriction and instructed him to take an aspirin for pain.  Later that night, Valentine went to Union Hospital complaining of knee pain.  Union Hospital examined and released Valentine without a prescription and with no work restriction.  The next day, Valentine saw orthopedic surgeon Dr. Robert J. Burkle who took another x-ray and ordered an MRI, which confirmed that Valentine suffered no fracture or ligament or meniscus tears.  In April, however, Dr. Burkle performed arthroscopic surgery upon Valentine's knee and found loose pieces of cartilage in the right knee.

Valentine had previously been diagnosed and treated for deteriorative arthritis in both of his knees, which required surgery.  In 2001, Dr. Burkle performed arthroscopic surgery to remove loose cartilage from Valentine's right knee.  In 2008, Valentine saw Dr. Haber complaining of daily knee pain since 2001.  Dr. Haber performed a series of four injections in both knees but Valentine continued to experience pain.

## II. **Discussion**

### A.   **Motion to Exclude Expert Testimony**

In its Motion to Exclude expert testimony, CSX contends that

Valentine failed to comply with Federal Rule of Civil Procedure 26(a)(2)'s requirements for expert disclosures. [Dkt. 63.] In his Rule 26(a)(2)(A) disclosures, Valentine lists thirty-two potential witnesses who may present evidence under Federal Rule of Evidence 702, 703, or 705, ranging from treating physicians and other healthcare providers to CSX workers expressing opinions on lighting and tripping hazards. [Dkt. 67 Ex. 4.]

Before addressing CSX's arguments, the Court finds it necessary to briefly discuss Federal Rule of Evidence 701. Rule 701 governs opinion testimony of lay witnesses. In 2000, an amendment to Rule 701 limited opinions admissible under Rule 701 to those that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). This amendment sought to prevent evasion of Rule 702 by parties proffering an expert in "lay witness clothing." *United States v. Conn*, 297 F.3d 548, 553 (7th Cir. 2002). As a consequence, it is a wise practice for a party to disclose as a potential expert any witness whose testimony might be based, in whole or in part, upon any such specialized knowledge; otherwise, the party risks exclusion of the witnesses' testimony for failing to properly disclose such witness pursuant to Rule 26.

Valentine's disclosures appear to err on the side of safety by disclosing all witnesses that might have opinions based upon any scientific, technical, or other specialized knowledge. For example, Valentine discloses a number of CSX employees whose

opinions are based on their railroad training, knowledge, and experience, such as Troy Donaldson, Brett Workman, Tom Cook, and Dan Justus.  [Dkt. 67 Ex. 4.]  CSX names these employees on its Final Witness List but did not disclose them as potential expert witnesses.  Presumably, CSX does not intend for these witnesses to offer opinions based on specialized knowledge of any sort.

**i.  Rule 26(a)(2)(B) Written Reports from Dr. Burkle and Other Healthcare Providers**

CSX argues that Rule 26(a)(2)(B) requires Valentine to provide written reports from Dr. Burkle and the other treating healthcare providers, because their opinions were formed in preparation of litigation and Valentine intends to offer the opinions to establish the cause of his injuries.  [Dkt. 64 at 2.] CSX argues that, because Valentine failed to provide written reports from Dr. Burkle and the other treating healthcare providers, these witnesses should be excluded from providing any expert testimony.

As a result of recent amendments, Rule 26(a)(2) now divides expert witnesses into two categories, one of which requires written reports and the other only summaries of the expert's testimony.  Rule 26(a)(2)(A) requires a party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.  Fed. R. Civ. P. 26(a)(2)(A).  That disclosure must be accompanied by a written report "if the witness is one retained or specially employed to

provide expert testimony in the case or one whose duties as the
party's employee regularly involve giving expert testimony."
Fed. R. Civ. P. 26(a)(2)(B).  If no written report is required,
then Rule 26(a)(2)(C) dictates that the Rule 26(a)(2)(A)
disclosure must state "(i) the subject matter on which the
witness is expected to present evidence under Federal Rule of
Evidence 702, 703, or 705; and (ii) a summary of the facts and
opinions to which the witness is expected to testify."  Fed. R.
Civ. P. 26(a)(2)(C).

Prior to the recent amendment of Rule 26, whether Rule
26(a)(2)(B) required a written report from a treating physician
was dependent upon the particular circumstances of the case,
often depending on the scope of the testimony.  *See Musser v.
Gentiva Health Servs.*, 356 F.3d 751, 758 n.3 (7th Cir. 2009);
*Krischel v. Hennessy*, 533 F. Supp. 2d 790, 795 (N.D. Ill. 2008).
Recently, in *Meyers v. National R.R. Passenger Corp.*, the Seventh
Circuit held that treating physicians are required to submit a
written report if their testimony "is offered to provide expert
testimony as to the cause of the plaintiff's injury … [and the
physician] did not make that determination in the course of
providing treatment."  619 F.3d 729, 734-35 (7th Cir. 2010).
Conversely, if Dr. Burkle and the other health care providers
formed their opinions at the time of treatment, a Rule
26(a)(2)(B) written report is not required.

On December 1, 2010, amended Rule 26(a)(2)(C) took effect

for experts not required to provide a written report.  *See Crabbs v. Wal-Mart Stores, Inc.*, No. 4:09-cv-00519, 2011 WL 499141, at * 1 (S.D. Iowa Feb. 4, 2011).  According to the Advisory Committee's Note, the amendment "resolves a tension that has sometimes prompted courts to require reports under Rule [26](a)(2)(B) even from witnesses exempted from the report requirement.  [A Rule 26](a)(2)(B) report is required only from an expert described in [Rule 26](a)(2)(B)."  Fed. R. Civ. P. 26 advisory committee's note (2010).  The Committee uses "physicians and other health care professionals" as an example of experts not required to provide written reports.  *Id.*  The Advisory Committee's Note appears at odds with the holding in *Meyers*.  It is unnecessary for the Court to resolve the issue, however, because, even under *Meyers*, the experts at issue in CSX's motion are not required to provide written reports.

In arguing that Dr. Burkle's causation opinion was not formed during treatment, CSX points to Dr. Burkle's treatment notes.  On April 9, 2009, Dr. Burkle's treatment notes state:

> … His cartilage on the condyles was a result of pulling on the condyles and the cartilage which was over the end of the bone which was a little more brittle than what we normally get.  This was due to wear and tear.  **It then gave way** and this is what we mainly cleaned up here.  **This is a direct result of his accident.**

[Dkt. 67, Ex. 1 at 4 (emphasis added).]

CSX emphasizes that from this statement you cannot tell what Dr. Burkle's opinion is regarding causation.  The Court, however,

finds that a fair reading of Dr. Burkle's treatment note demonstrates that, at the time of treatment and prior to the commencement of this litigation, Dr. Burkle formed the opinion that the March 2, 2009 accident caused Valentine's already brittle cartilage to give way requiring the surgery to remove the loose cartilage.

In further support of its argument that Dr. Burkle's opinions were formed in anticipation of litigation, CSX points to an exchange of letters between Valentine's counsel and Dr. Burkle that occurred after the commencement of this litigation. [Dtk. 64 at 3.] In the first letter, Valentine's counsel requests information regarding: (a) whether the conditions diagnosed by Dr. Burkle were caused by the by the March 2, 2009 accident, (b) Valentine's permanent restrictions, (c) likely aggravating conditions, (d) future medical care needed and the costs, (e) permanency of pain and disability, and (f) susceptibility to further injury. [Dkt. 64 Ex. 1.] The second letter asks Dr. Burkle for a response to sections (b), (d), (e), and (f) of the prior letter. [Dkt. 64 Ex. 3.] These letters fail to show that Dr. Burkle developed his opinions in anticipation of litigation. At most, the letters represent Valentine's counsel's attempts to clarify and summarize Dr. Burkle's previously rendered opinions. Dr. Burkle's responses to the letters are consistent with his deposition testimony taken earlier and with his treatment notes. [Dkt. 64 Ex. 2 & 4.] Dr. Burkle was also the doctor who placed

Valentine on medical leave and therefore, as part of treating Valentine, Dr. Burkle had to form opinions regarding the permanency of the injuries and the type of restrictions necessary.

The Court concludes that Dr. Burkle, as Valentine's treating physician, formed his opinions in the course of providing treatment and not in anticipation of litigation. Accordingly, no written report was necessary under Rule 26(a)(2)(B).

In his Rule 26(a)(2)(A) disclosures, Valentine identified twelve other treating physicians or medical personal. CSX argues that the Court should prohibit these experts if they intend to offer causation testimony formed in anticipation of litigation because no written reports have been provided. Valentine, however, contends that any testimony from these witnesses would be limited to patient history, examination, diagnosis, treatment plan and recommendations, and other information consistent with Valentine's medical records. As long as the witnesses testify within these limits, no written reports are required and there is no dispute for the Court to resolve. Even if these witnesses could not testify as experts, they may testify as fact witnesses. *Haack v. Bongiorno*, No. 08 C 02488, 2011 WL 862239, at * 5 (N.D. Ill. March 4, 2011); *see also* Fed R. Civ. P. 26(a)(2)(C) advisory committee's note (2010).

ii. **Rule 26(a)(2)(C) Summaries for Experts Not Required to Provide Reports**

For those experts who are not required to provide a report pursuant to Rule 26(a)(2)(B), amended Rule 26(a)(2)(C) requires the proffering party to provide a summary of the expert's testimony. CSX argues that Valentine failed to comply with Rule 26(a)(2)(C) for any of the thirty-two listed expert witnesses, including the treating physicians, by not providing summaries.

Rule 26(a)(2)(C) requires the disclosure to state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). "'This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.'" *Haack*, 2011 WL 862239, at * 4 (quoting Fed R. Civ. P. 26(a) advisory committee's note (2010)).

The Court must determine what, if anything, was required of Valentine under Rule 26(a)(2)(C). The 2010 amendments govern cases filed after December 1, 2010 and cases filed before December 1, 2010 insofar as "just and practicable." *Chevron Corp. v. Shefftz*, 10-mc-10352-JLT, 2010 WL 4985663, at * 5 (D. Mass. Dec. 7, 2010). Valentine filed this case on November 17, 2009, so the amendment applies only if such application is "just and practicable." The parties' Case Management Plan required

Valentine to serve his expert disclosures on or before December 17, 2010. [Dkt. 16.] Given that amended Rule 26(a)(2)(C) took effect just seventeen days prior, the Court finds that it would not be "just and practicable" to require Valentine to comply with the requirements of amended Rule 26(a)(2)(C) in this case.

If, however, Rule 26(a)(2)(C) were to apply to this case, it would be necessary to determine whether the disclosures provided by Valentine were sufficient to satisfy the Rule. Little case law exists to guide the Court in what is an acceptable summary to satisfy amended Rule 26(a)(2)(C). In *Crabb v. Wal-Mart Stores, Inc*., the court found that a physical therapist's functional capacity evaluation accompanying plaintiff's designation of experts complied with Rule 26(a)(2)(C). No. 4:09-cv-00519, 2011 WL 499141, at * 1 (S.D. Iowa Feb. 4, 2011). The court, however, limited the physical therapist's testimony to the facts and opinions incorporated in his evaluation. *Id.*

There is no question that Valentine failed to provide anything labeled a Rule 26(a)(2)(C) disclosure. In *Crabb*, however, this did not appear to matter as long as the plaintiff provided some information that was sufficient to satisfy Rule 26(a)(2)(C). Given that Rule 26(a)(2)(C) only recently took effect, the Court finds that Valentine's disclosures in his supplemental Rule 26(a)(2)(A) submission were nominally sufficient to satisfy Rule 26(a)(2)(C) with regard to the

potential experts identified therein if such disclosure were required.[1]  [Dkt. 67 Ex. 10.]

A court may also find any noncompliance with Rule 26(a) to be harmless.  In analyzing whether such noncompliance is harmless, a court should consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003).

Here, there is no surprise or prejudice to CSX.  A number of the experts that CSX argues should be excluded are CSX's own employees.  Two of the experts, Dr. Farr and Dr. Justice, are disclosed in CSX's own Rule 26(a)(2)(C) disclosure.  Many others have been deposed or their medical records have been provided. The failure to provide summaries is unlikely to disrupt the trial.  There is no evidence that Valentine acted in bad faith or willfully by not providing Rule 26(a)(2)(C) disclosures.  The Court, therefore, finds any noncompliance by Valentine with Rule 26(a)(2)(C) to be harmless.

---

[1] While examination of the sufficiency of a Rule 26(a)(2)(C) disclosure must be conducted on a witness-by-witness basis, the Court would generally prefer to see more detailed descriptions of the witnesses' potential opinion testimony than were provided by either party in this case and, had Defendant timely requested supplementation of the disclosures provided, the Court might well have ordered such supplementation.  However, in the present circumstance, the disclosures provided were not so wholly deficient to justify the drastic step of exclusion of the testimony of the witnesses identified, particularly when Defendant made no effort to obtain such information prior to seeking to exclude the witnesses.

**C.      Motion to Exclude Dr. Dennis Gates' Report and Testimony**

Valentine retained Dr. Dennis Gates as an expert medical witness to assist in establishing the causation element of his negligence claim.  Dr. Gates is a board certified orthopedic surgeon that focuses his practice on treating knee injuries.  CSX contends that Dr. Gates' testimony should be excluded because it is not scientifically reliable and is speculative.  [Dkt. 62 at 3.]

Under the Federal Rules of Evidence, any person with "'specialized knowledge'" due to "'skill, experience, training, or education'" qualifies as an expert.  *Banister v. Burton*, No. 10-1484, 2011 WL 547487, at * 3 (7th Cir. Feb. 14, 2011) (quoting Fed R. Evid. 702).  Expert witnesses may testify "in the form of an opinion … if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed R. Evid.  702.  The primary purpose of Rule 702 is to exclude experts offering opinions based on "junk science." *Lennon v. Norfolk & Western Ry. Co.*, 123 F. Supp. 2d 1143, 1147 (N.D. Ind. 2000).

The court acts as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Banister*, 2011 WL 547487, at * 3 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).

In its role as a gatekeeper, the court has a great deal of discretion to determine both "the method by which the reliability of the proposed expert testimony will be measured and whether the testimony is, in fact, reliable." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007). In determining reliability, the court looks at the facts and circumstances of the case. *Id.*

CSX argues that Dr. Gates has not followed accepted methodologies in forming his opinions by failing to rule out all possible alternative causes of Valentine's injuries through the process of differential diagnosis or differential etiology. "A differential diagnosis is 'a patient-specific process of elimination that medical practitioners use to identify the most likely cause of a set of signs and symptoms from a list of possible causes.'" *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 254 (2d Cir. 2005) (quoting *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1413 (D. Or. 1996)). When used to establish causation, the process is called differential etiology whereby "the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment." *Myers v. Illinois R.R. Co.,* 629 F.3d 639, 644 (7th Cir. 2010). While CSX presents no evidence that differential etiology is the only acceptable methodology, the Court will nonetheless analyze Dr. Gates' methodology using the differential etiology process.

According to CSX, there are at least three potential causes of Valentine's injury, including general wear and tear to his arthritic knee, another bump to the knee, and the March 2, 2009 accident. CSX contends that Dr. Gates' testimony must show that "it is likely, or more than possible, that [CSX's] negligence had a causal relationship with the injury and disability for which [Valentine] seeks damages." [Dkt. 62 (citing *Mayhew v. Bell S.S. Co.*, 917 F.2d 961, 964 (6th Cir. 1990).] CSX argues that Dr. Gates' testimony cannot show that it is "likely, or more than possible" that CSX's negligence caused Valentine's injury because Dr. Gates does not "rule in" or "rule out" potential causes and inappropriately relies on temporal proximity in concluding the March 2, 2009 accident caused Valentine's injuries.

CSX cites to *Myers v. Illinois Central R.R. Co.*, for support in its argument that Dr. Gates is required to "rule in" and "rule out" potential causes. [Dkt. 62 at 4-5.] The plaintiff in *Myers* alleged that the cumulative trauma injuries to his knee, elbow, back, and neck were caused by his work as a conductor for defendant railroad. 629 F.3d 639, 641 (7th Cir. 2010). To establish causation, the plaintiff expected to call an ergonomist and three treating physicians. *Id.* The district court excluded the experts based on their lack of reliable procedures and methods and granted summary judgment in favor of the defendant. *Id.* The district court concluded that the experts did not have an adequate understanding of plaintiff's medical history or his

work as a conductor to give an opinion as to the cause of plaintiff's injuries.  The district court found that the ergonomist's analysis of railroad conditions was not focused on plaintiff's specific work and, therefore, was not reliable.  *Id.*

On appeal, the Seventh Circuit first addressed the issue of whether plaintiff needed expert testimony to establish that defendant's negligence specifically caused his injuries.  *Id.* The court found that expert testimony is needed if there are no obvious origins to an injury and there are multiple potential causes.  *Id.* at 643.  If a layperson can understand what caused the injury, such as when a plaintiff has a broken leg, expert testimony is not needed.  *Id.*  The court concluded the plaintiff needed expert testimony because he could not point to a specific injury or moment that brought on the injuries and the cause would not be obvious to a layperson.  *Id.*  According to the court, no generally understood causal connection existed between the plaintiff's cumulative injuries and his working conditions and an expert was needed to link plaintiff's injuries to his working conditions at the Railroad.  *Id.*

The appeals court next addressed whether the district court properly excluded the experts.  The court found that the three treating physicians knew little about the plaintiff's medical history or the type of work he performed and, therefore, could not "rule in" or "rule out" potential causes.  *Id.* at 645.  The court found that the ergonomist could not answer the specific

question of whether plaintiff's work for the defendant caused his injuries. *Id.* at 644. The ergonomist's analysis only focused on the general question of whether conditions at the railroad could cause the type of injuries plaintiff suffered from and did not focus on whether the specific tasks that the plaintiff performed actually caused his injuries. *Id.*

The present case is distinguishable from *Myers.* First, unlike the treating physicians in *Myers*, there is ample evidence that Dr. Gates reviewed Valentine's medical history and understood what effects the March 2, 2009 accident could have on Valentine's knee. Second, Valentine points to a specific trauma that allegedly caused his knee injuries, the March 2, 2009 accident. Unlike in *Myers*, there is a generally understood causal connection between a fall such as Valentine suffered during the March 2, 2009 accident and the type of injuries of which Valentine complained and Dr. Burkle found. Thus, the Court finds *Myers* to be distinguishable and not dispositive in determining whether Dr. Gates' methodology is reliable for a case involving injuries from a trip and fall accident.

In support of its argument that Dr. Gates cannot rely on temporal proximity to establish causation, CSX cites to several cases in which a question existed as to whether the alleged cause was actually capable of causing the injury or in differential etiology terms, whether the alleged cause could be "ruled in." In *Ervin v. Johnson & Johnson*, *Inc.* 492 F.3d 901, 903 (7th Cir.

2010), the plaintiff alleged that defendant's drug caused the plaintiff to develop an arterial blood clot. The expert ruled in the drug as a cause of the clot based on the proximity between the patient receiving the drug and the development of the clot and on a single case report of a patient receiving the drug and developing a blood clot. *Id.* Since no other evidence existed that the drug caused such clots, the court concluded that the expert did not have a reliable basis for ruling the drug in as a possible cause of the clot. *Id.* at 904-905.

Likewise, in *Lennon*, the plaintiff's expert sought to establish that a head injury received at work caused plaintiff's multiple sclerosis. 123 F. Supp. 2d at 1146. Despite some early studies showing other MS patients had previous head traumas, the overwhelming weight of authority suggested that no link existed between head trauma and the development of MS. *Id.* at 1151. Because plaintiff's experts failed to review the most recent studies, the court excluded the expert from testifying that plaintiff's head trauma caused his MS. *Id.* at 1154. Thus, the alleged cause could not be "ruled in" because there was insufficient evidence demonstrating that head traumas were capable of causing MS. *Id.*

Finally, in *Hannon v. Pest Control Services Inc.,* 734 N.E.2d 674 (Ind. Ct. App. 2000), plaintiffs alleged that pesticide caused their injuries despite a lack of any evidence that the chemicals in the pesticide caused such injuries. According to

the court, the experts were "relying on mere temporal coincidence of the application and the [plaintiffs'] alleged and self-reported injuries." *Id.* at 682.

In the present case, however, no real dispute exists that the March 2, 2009 accident was capable of causing Valentine's injuries. Defendant concedes that the March 2, 2009 accident is one potential cause of Valentine's injuries. That a trip and fall trauma to the knee could cause injury to an already arthritic knee seems relatively straightforward enough as to not require extensive expert testimony for it to be "ruled in" as a potential cause. This case, therefore, is distinguishable from *Ervin*, *Lennon*, and *Hannon*, all of which required expert testimony to "rule in" the alleged cause by establishing that the alleged cause was capable of causing the plaintiffs' injuries.

What is actually at issue in this case is whether the March 2, 2009 accident is the cause of Valentine's injuries. CSX contends Dr. Gates cannot testify that the March 2, 2009 accident caused Valentine's injuries because he fails to "rule out" other potential causes. CSX appears to have taken the position that Dr. Gates must "rule out" all other potential causes with a high degree of certainty. CSX's own cited standard for causal relationship of "likely, or more than possible", suggests a much lower degree of certainty. [Dkt. 62 (citing *Mayhew v. Bell S.S. Co.*, 917 F.2d 961, 964 (6th Cir. 1990).] The Court finds that Dr. Gates does not have to "rule out" other potential causes with

such a high degree of certainty.  The fact that other potential causes are not completely ruled out can be explored by cross-examination.  *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000).

CSX attempts to focus the Court solely upon "sound bites" of Dr. Gates' deposition testimony to show that Dr. Gates cannot "rule out" other potential causes of Valentine's injuries.  Dr. Gates' testimony, however, must be viewed as a whole.  When viewed as a whole, the deposition testimony establishes that Dr. Gates had a factual basis to support his belief that Valentine suffered from a "significant bump" during the March 2, 2009 accident that was capable of causing the knee problems at issue in this case.  [Dtk. 68-4, Gates' Dep. 39:23-40:06, January 17, 2011.]  Dr. Gates stated that it is "more reasonable than not" that the need for the arthroscopy was caused by the March 2, 2009 accident.  [*Id.* at 44:13-44:15.]

CSX contends that Dr. Gates inappropriately uses a proximity in time argument as a basis for this opinion.  [Dkt. 62 at 12.]  CSX misunderstands the role of temporal proximity.  While temporal proximity might be insufficient on its own to "rule in" potential causes, temporal proximity can be a useful factor in "ruling out" potential causes in hopes of arriving at the specific cause of a plaintiff's injuries.

For example, in *Cooper*, the court found the expert's methodology, that relied on temporal proximity, acceptable.  211

F.3d at 1021. The expert determined that a fall caused plaintiff's pain. *Id.* at. 1020. The expert based this opinion on plaintiff's report that he had no pain before the fall but suffered from pain after the fall. *Id.*

Likewise, the fact that Valentine alleges to have had no significant pain in his right knee leading up to the accident and then significant pain and the inability to extend his knee afterwards, while not dispositive, is relevant to a causation analysis. Dr. Gates was free to use Valentine's report to "rule out" potential causes that did not correspond with Valentine's report of pain. *See Cooper*, 211 F.3d at 1021. Dr. Gates' experience corroborates Valentine's reports because Dr. Gates opines that had the cartilage broken off before the March 2, 2009 accident, Valentine would have had difficulty working. [Dkt. 68-4, Gates' Dep. 127:11-127:18.]

It is apparent from CSX's brief and statements at the hearing regarding this matter that CSX does not believe Valentine. The factual basis of an expert's opinion, however, goes to the credibility of the testimony, and not its admissibility. *Cooper*, 211 F.3d at 1021. CSX will have an opportunity to vigorously cross-examine both Valentine and Dr. Gates at trial and will be free to challenge the credibility of the facts that underlie Dr. Gates' opinions. However, any questions by CSX regarding the veracity of Valentine's statements do not serve to render Dr. Gates' opinions inadmissible.

Moreover, Dr. Gates did not rely solely upon temporal proximity. Dr. Gates reviewed Valentine's medical history and examined Valentine. Dr. Gates also reviewed Dr. Burkle's testimony and treatment notes. Under Fed. R. Evid. 703, experts may base opinions on facts or data made known to them before a hearing "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703. In general, doctors rely upon representations made by their patients as well as the opinions of other medical professionals and colleagues in forming their opinions. *Williams v. Brown*, 244 F. Supp. 2d 965, 967 (N.D. Ill. 2003).

As noted above, Dr. Burkle's treatment notes indicated that the fall caused Valentine's already brittle cartilage to break loose requiring surgery. During the April 8, 2009 surgery, Dr. Burkle determined that because of the locations of the tears in Valentine's knees, the tears resulted from the fall and not wear and tear. Thus, Dr. Burkle's testimony and treatment notes, which state that Valentine's injuries "[were] a direct result of his accident," provide Dr. Gates a reliable basis for his opinions. [2] [Dkt. 67, Ex. 1 at 4.]

At the hearing held on March 30, 2011, Defendant's counsel stated, "If Mr. Valentine had fractured his kneecap or dislocated

---

[2] Under Fed. R. of Evid. 703, even if Dr. Burkle was excluded as an expert, Dr. Gates could still rely upon Dr. Burkle's testimony and treatment notes in forming his opinion.

his knee … then it would be an easier case to say causation is pinned on this." [Oral Argument at 6:00:07-6:00:15]. No one disputes that Valentine had broken cartilage in his right knee. Dr. Burkle's treatment notes demonstrate his opinion that the March 2, 2009 accident caused the cartilage to break loose. This is no different than a treating physician forming the opinion that a patient's fall caused a patient's fractured or dislocated knee. CSX might disagree with the opinion, but such disagreement does not render the opinion inadmissible.

Based upon the all of the information provided, the Court is satisfied that Dr. Gates' testimony is the product of reliable scientific methods and analyses. Accordingly, the Court denies Defendant's Motion to Exclude Dr. Gates' testimony and report.

## IV. Conclusion

For the reasons stated above, Defendant's Motions to Exclude expert testimony, Dockets 61 and 63, should be **denied**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:
    05/10/2011

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Craig Wynn Church
HOEY & FARINA
cchurch@hoeyfarina.com

John C. Duffey
STUART & BRANIGIN LLP
jcd@stuartlaw.com

James F. Olds
STUART & BRANIGIN LLP
jfo@stuartlaw.com

Sarah N. Snoeberger
STUART & BRANIGIN LLP
sns@stuartlaw.com